STATE *ex rel.* WILSON *v.* MAYS, *Commissioner of Police et al.*

(*Nashville*, December Term, 1949.)

Opinion filed March 17, 1950.

K. T. McConnico, Jr., of Nashville, for complainant.

E. C. Yokley, City Attorney, of Nashville, for defendants.

Mr. Justice Tomlinson delivered the opinion of the Court.

In February, 1938, Mrs. Wilson, appellee here, was illegally discharged from her position as matron in the

police department of the City of Nashville. She instituted mandamus proceedings and sought therein judgment for salary of which she had been thus deprived. This suit resulted in the entry on April 17, 1939 of a decree awarding her a judgment against the City for the amount of this salary. The City promptly paid this judgment. This decree likewise ordered the issuance of a peremptory writ of mandamus commanding the City "to restore" Mrs. Wilson "to her position and employment as matron in the police department, City of Nashville". At the time of the entry of this decree the position to which that decree ordered Mrs. Wilson restored had been under civil service since June 1, 1938. Therefore, Mrs. Wilson would have been under civil service had the City obeyed the writ by restoring her to her position.

On the day after the entry of this decree Mrs. Wilson reported for work and on numerous occasions thereafter. The City declined to accept her services until November, 1942, notwithstanding the fact that it had not appealed from the April 1939 decree. Mrs. Wilson's restoration to the position in 1942 was recorded as "temporary". Those temporarily employed by the City were and are not entitled to a civil service status. Mrs. Wilson has occupied the position continuously since such November, 1942 restoration.

It thus conclusively appears that notwithstanding the decree of April, 1939, Mrs. Wilson was deprived entirely of the salary of the position until November, 1942 and, insofar as the records of the City stood, was not under civil service, though the position which she occupied and to which the mandamus had ordered her restored was under civil service.

In February, 1948, Mrs. Wilson instituted the suit now under consideration. The relief she sought in this suit is (1) a judgment for the salary of the position in question from the date of the entry of the 1939 decree to the date of her being put back to work November 1942, and (2) a writ of mandamus requiring the City to place her on its rolls as a civil service employee effective June 1, 1938. She predicates her alleged right to the relief sought upon the 1939 decree.

The defense interposed by the answer of the City is that when Mrs. Wilson accepted restoration to employment on a temporary basis in November, 1942 and continued to serve under such appointment she thereby acquiesced in and consented to a new arrangement which estops her from asserting a civil service status, and (2) her long delay in bringing suit for the salary in question amounts to laches so gross as to defeat her claim for this back salary, particularly where the one who is to pay it is a governmental entity.

The Chancellor granted all the relief sought holding that (1) the City was in contempt of Court because of its disobedience to the order of the April, 1939 decree; hence, is not entitled to the defense of laches; and (2) that the defense of laches is no bar where the party invoking it is equally at fault; and (3) the City has not been prejudiced by Mrs. Wilson's delay; hence, the defense of laches is not available.

The City has appealed and by appropriate assignments of error renews the insistences stated.

In considering the availability to the City of the defense of laches there must be kept in mind that this is a defense which is not available to one who has not been prejudiced by the delay, *Fisher* v. *Durand*, 179 Tenn.

635, 644, 169 S. W. (2d) 671; and is not a bar where the party pleading it "may be equally at fault" with the person against whom it is sought to be interposed. *Barnes* v. *Fort*, 181 Tenn. 522, 533, 181 S. W. (2d) 881, 885.

No one was employed in the position from which Mrs. Wilson was illegally discharged prior to her restoration there in November, 1942. However, if the City is required to pay her the salary which she seeks it will amount to a payment for services which were not rendered. To that extent the result is prejudicial to the City.

Insofar as it applies to the period commencing in November, 1942 with her restoration to this position on a temporary basis and ending with the filing of a bill in January, 1948, the delay in bringing suit was not prejudicial to the City since it does not appear to have been any more difficult to pay this accrued salary in January of 1948 than it was at the time it accrued in November of 1942. So, if laches is to apply by reason of the aforementioned prejudice to the City, it must be for the delay of Mrs. Wilson from April 17, 1939 (date of entry of the mandamus decree) to November, 1942 (date of restoration on a temporary basis) in asserting her rights under that April, 1939 decree. It is for this period, as aforesaid, that a judgment for the salary is sought.

During the period just above mentioned, Mrs. Wilson was doing everything she could short of a lawsuit with its attendant expenses to procure the restoration which the April, 1939 decree had ordered, but the City continued to ignore her efforts and to ignore the order of the Court during this period. The fact, therefore, that the City did not receive the services of Mrs. Wilson during

the period in question is its fault and because of its disobedience of the April, 1939 decree. Ordinarily, therefore, the laches, if any, of Mrs. Wilson is not available to the City as a defense to her suit for recovery of the salary to which she was legally entitled. *Barnes* v. *Fort,* supra.

It is said, however, that the defense of laches is available in this particular case because during this interval (April, 1939-November, 1942) Mrs. Wilson did not request or demand the payment of this back salary, or request it prior to the filing of her bill in 1948. Assuming this to be literally true, no prejudice resulted to the City from the time of her re-appointment in 1942 to the date of the filing of the bill. As to the period intervening between the entry of the mandamus decree in 1939 and her restoration on a temporary basis in 1942, it is clear that such a demand would have been futile. The City was refusing during this period to restore Mrs. Wilson to her position on any basis, the writ of mandamus notwithstanding. In this situation, no conclusion can be reached other than that the City would have refused any request for payment of the salary belonging to the position which it was refusing to permit her to occupy. In the Washington case of *Watkins* v. *Seattle,* 2 Wash. (2d) 695, 99 P. (2d) 427, annotated in 145 A. L. R. 775, it was held that a demand for reinstatement automatically carries with it the right to compensation during the illegal withholding of the position, and that no separate demand for the compensation is necessary. Whether this is or is not technically true, it is a conclusion which appeals to reason. As a matter of fact, Mr. Wilson, acting for Mrs. Wilson, requested payment for this back salary in 1943, and that request was refused.

It should be stated here that the City's disobedience to the writ of mandamus may have been the result of an erroneous view of the law by the City's legal department because of the happening of an event, not necessary here to detail, about the time of the entry of the April, 1939 decree. Nevertheless, the City was faced with a peremptory writ of mandamus in a decree from which it did not appeal. If it conceived the facts to have been so changed as to merit a change in that decree it was its duty to seek immediately a modification thereof in accordance with its view of the law applicable to the new fact. Compare *Rutherford* v. *Metcalf*, 6 Tenn. 58, 59. *Bradshaw* v. *Bradshaw*, 23 Tenn. App. 359, 362-363, 133 S. W. (2d) 617. The City never sought such modification and the opinion of its legal department as to the law applicable to the subsequent event was in fact erroneous.

The City strongly relies upon *State ex rel. Ball* v. *City of Knoxville*, 177 Tenn. 162, 147 S. W. (2d) 97, 145 A. L. R. 762, and the Kentucky case of *City of Paducah* v. *Gillespie*, 273 Ky. 101, 115 S. W. (2d) 574 and the case of *Nicholas* v. *United States*, 257 U. S. 71, 42 S. Ct. 7, 66 L. Ed. 133. The plea of laches was sustained in each of those cases, and they are in many respects on all fours with the case at bar. Likewise, however, there are controlling differences and, of course, as noted in *State* v. *McPhail*, 156 Tenn. 459, 2 S. W. (2d) 413, in considering the applicability of the defense of laches "each case must be determined upon its own facts".

In no one of the cases just mentioned was there present the very important fact that the defendant was ignoring and disobeying a writ of mandamus. There are other differences observable upon a reading of the cases. For instance, in the City of Knoxville case the Court

said that had complainant sought restoration instead of leading the officials to believe the transfers met with her approval she would have been entitled to relief. In the Kentucky case the failure of the complainant to assert his rights until he brought suit lead the City into the employment of some one else to fill the position. In the United States case the Court said that complainant [257 U. S. 71, 42 S. Ct. 9] ''did *nothing* for his vindication until he brought this suit 3 years after his removal from the office, to recover compensation. We hold, therefore'', etc. (Emphasis supplied.)

▇ The insistence that Mrs. Wilson is not entitled to be given civil service status as of June 1, 1938 is met at its threshold with the fact that she would have had exactly that status had the City obeyed the mandamus writ commanding it to restore her ''to her position and employment as matron in the police department''. We cannot agree with the insistence of the City that Mrs. Wilson's position now with reference to civil service status is inconsistent with the position taken by her in the mandamus suit or decree there entered in April, 1939. The fact that that decree did not specifically mention civil service is immaterial. It was attached, as a matter of law, to the position to which she was ordered restored with the direction that the City pay her all the salary accruing to that position from the date of her illegal discharge to the date of the decree. This was one of the benefits attached to the position in the same sense that the salary was a benefit. That was why the City was made to pay her such salary. She was no less entitled to the benefit of civil service status than she was to the salary.

■ It is said, however, in behalf of the City that Mrs. Wilson acquiesced in her restoration to the position on a temporary basis; therefore, is estopped from asserting a civil service status. Mrs. Wilson testified that it was not until just prior to the filing of her bill in this case that she became aware of the fact that her restoration to the position was on a temporary basis. The Chancellor found this to be the fact. It does not seem to be contradicted.

There is nothing in the record to indicate any intention upon the part of Mrs. Wilson to waive any benefit attached to the position to which she was seeking to be restored as ordered by the Court. Her conduct indicates that she did not understand that her restoration to this position in 1942 was under such circumstances as to deprive her of civil service status. It is shown without contradiction that when she acquired the idea after her restoration that there might be some question as to her civil service status she began to make inquiries and finally in 1946 wrote the City a letter of inquiry, but no reply was received.

■ We conclude, as did the Chancellor, that the defense of laches is not available to the City in this case and that Mrs. Wilson is not estopped from asserting her right to civil service status as of June 1, 1938, and is entitled to both the salary of which she was deprived and of such civil service status.

■ Mrs. Wilson has assigned as error the failure of the Chancellor to allow interest on the recovery from November 21, 1942. Mrs. Wilson did not perfect her appeal; hence, is in no position to assign this as error, were it otherwise tenable.

The decree of the Chancellor will be affirmed.

All concur.